**FILED**
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

★ OCT 9 – 2009 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

                              Appellant,

        — against —

EDWARD P. BOND as Liquidating Trustee of
The Liquidating Trust created by the Chapter 11
Plan for PT-1 Communications. Inc., PT-1 Long
Distance, Inc., and PT-1 Technologies, Inc.

                              Appellee.
-------------------------------------------------------------X

**MEMORANDUM and ORDER**

09-CV-1824 (SLT)

**TOWNES, United States District Judge:**

This motion arises out of bankruptcy proceedings between the United States and Edward P.

Bond, the Liquidating Trustee for the Liquidating Trust established under an agreement with PT-1

Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, (the "Liquidating

Trustee" or "Trustee").   On April 10, 2009, the United States filed a notice of appeal and moved

this Court, pursuant to 28 U.S.C. § 158(a)(3) and Bankruptcy Rules 8003(a), for an order granting

it leave to bring an interlocutory appeal from the March 31, 2009, decision of the United States

Bankruptcy Court for the Eastern District of New York, granting the Liquidating Trustee's motion

for summary judgment in part.   *See In re PT-1 Commc'ns, Inc.*, 403 B.R. 250 (Bankr. E.D.N.Y.

2009) (hereinafter. "*In re PT-1 III*").   For the reasons set forth below, the United States' motion

for leave to appeal is denied.

## BACKGROUND

In February 1999, the shareholders of PT-1 Communications, Inc., with PT-1 Long

Distance, Inc. and PT-1 Technologies, Inc. (collectively "PT-1"), sold their common stock to

STAR Telecommunications ("STAR"), making PT-1 and its subsidiaries wholly-owned

subsidiaries of STAR. *Id.* at 256. PT-1 was consolidated with STAR and other affiliated corporations for tax reporting purposes and could not file any tax returns on its own behalf. *Id.*

In turn, STAR entered an obligation with MCI WorldCom Communications, Inc. ("WorldCom"), pledging its stock interest and right to elect a new board of directors in PT-1 to WorldCom as security on STAR's obligation to WorldCom. *Id.* When STAR defaulted on its obligation, WorldCom exercised its right to vote on a new PT-1 board of directors, but the shares were not transferred from STAR to WorldCom. *Id.*

On March 9, 2001, under the direction of the new board of directors, PT-1 filed voluntary petitions for Chapter 11 reorganization with the United States Bankruptcy Court for the Eastern District of New York. *Id.* A joint plan for reorganization was confirmed on November 23, 2004 and, pursuant to the plan, the Liquidating Trust received certain assets, rights and powers from PT-1. *Id.*

In early 2002, STAR requested an extension of time to file its consolidated federal tax return on behalf of itself and its subsidiaries, including PT-1. *Id.* at 256-57. A few days before the extended September 16, 2002 deadline, STAR informed PT-1 that it would not be included in STAR's consolidated tax return. *Id.* at 257. STAR claimed that WorldCom should incorporate PT-1 into its tax returns since WorldCom selected the board of directors that controlled PT-1, even though STAR continued to own PT-1's shares. *Id.* In turn, WorldCom held that PT-1 belonged on STAR's consolidated tax return. *Id.* With no company willing to include PT-1 in its consolidated tax returns, PT-1 filed its own tax return for the period of March 9, 2001 through December 31, 2001 (the "Short Period"), paying approximately $6.7 million in taxes and $207,000 in interest. *Id.* The period leading up to March 9, 2001 (from January 1, 2001 and March 8, 2001) came to be known as the "Stub Period" in this litigation. Appellant's Br. 2. The Internal

Revenue Service ("IRS") accepted PT-1's tax return and payment for the Short Period. *In re PT-1 III*, 403 B.R. at 257.STAR later filed for bankruptcy, failed to submit a consolidated tax return for 2001, and was liquidated. *Id.*

On February 6, 2004, the IRS filed the first of four proofs of claims for post-petition taxes, penalties and interest. *Id.* The IRS's administrative expense payment sought $2,064,860.08 in penalties and interest for the Short Period, $25,900,740.77 in taxes, penalties and interest for the Stub Period, and $7,189,664.92 for taxes, penalties, and interest for the tax year ending December 31, 2002 (the "2002 tax year"). *Id.* On August 13, 2004, the IRS filed an amended request seeking interest and penalties for the Short Period totaling $2,064,860.08, and $7,189,664.02 for taxes, penalties, and interest for the 2002 tax year. *Id.* The IRS also withdrew its claim for taxes for the Stub Period. *Id.* at 266. On March 18, 2005, the IRS filed another amended proof of claim seeking taxes, penalties and interest for the Short Period totaling $643,298.99, an additional request of $778.623.06 for penalties and interest for the Short Period, and $13,048,272.67 for taxes, interest and penalties for the 2002 tax year. *Id.* at 257. On August 1, 2006, the IRS filed another amended request seeking taxes, penalties and interest for the Short Period in the amount of $581,040 arising from the IRS's disallowance of a net operating losses ("NOL") carry forward from the STAR consolidated tax return for the tax year ending December 31, 2000 and NOL carry backs from the 2002 tax year. *Id.* It also sought penalties and interest totaling $470,086.54 for PT-1's failure to timely pay its taxes and failure to pay estimated taxes for the Short Period, and $7,863,701.84 for estimated taxes for the 2002 tax year. *Id.*

On March 14, 2005, shortly before the IRS's third proof of claim, Trustee filed a motion to expunge the IRS's claims for taxes, interest and penalties for the Short Period and the 2002 Tax Year. *Id.* at 257. Trustee also counterclaimed for a declaration that PT-1 was permitted to file a

tax return for the Stub Period and carry forward and carry back NOLs against the taxable income for the Short Period. The IRS maintained that, in order to compute the NOLs from the Stub Period allocable to PT-1, it must receive the consolidated tax returns from the STAR group for the Stub Period and it has refused to accept PT-1's stand-alone tax return. *Id.* at 269. Trustee also sought to recover a 1998 Tax Refund, plus interest, and a 2001 Tax Refund, plus interest. *Id.* at 258. On August 1, 2006, Trustee sought summary judgment against the IRS's claims for taxes, interest and penalties for the Short Period and the 2002 tax year and for his counterclaims.

On December 7, 2006, the bankruptcy court granted the Trustee's motion in part and disallowed the IRS's request for an administrative payment relating to the 2002 tax year as a result of the IRS's failure to timely respond to a request for a determination of the Trustee's tax liability pursuant to 11 U.S.C. § 505(b)(2). *See In re PT-1 Commc'ns, Inc.*, 357 B.R. 217 (Bankr. E.D.N.Y. 2006) (hereinafter, "*In re PT-1 I*"). The United States attempted to appeal this decision to this Court (Cogan, J.). Judge Cogan *sua sponte* raised the question of the Court's subject matter jurisdiction and ordered briefing on the issue. *See United States v. Bond*, No. 07-CV-435, Order Dismissing Appeal (E.D.N.Y. Mar. 9, 2007) (hereinafter, "*Bond I*"). In a cogent analysis, Judge Cogan determined that the appeal was interlocutory and did not meet the analogous standard articulated in 28 U.S.C. § 1292(b) for leave to file an interlocutory appeal. *See id.*

On March 26, 2007, the bankruptcy court disallowed the IRS's claims for penalties and interest for PT-1's failure to timely pay its Short Period taxes and for penalties related to the 2001 tax year. *In re PT-1 Commc'ns, Inc.*, 386 B.R. 402 (Bankr. E.D.N.Y. 2007) (hereinafter, "*In re PT-1 II*"). The bankruptcy court also denied summary judgment on Trustee's counterclaims, without prejudice, subject to renewal upon a more complete record. *Id.*

On September 21, 2007, the Trustee filed a second motion for summary judgment seeking to expunge the IRS's claim for $582,040 for taxes and interest for the Short Period and renewed his counterclaims directing the IRS to accept PT-1 Group's Stub Period tax return and seeking awards for the 1998 and 2001 Tax Refund, plus interest. *In re PT-1 III*, 403 B.R. at 258. On March 31, 2009, the bankruptcy court granted Trustee's second judgment motion in part. *Id.* at 277. The bankruptcy court granted summary judgment in favor of Trustee on the IRS's claim for taxes and interest for the Short Period, as it was filed after the bar date for administrative expenses and thus time barred. *Id.* at 256-61. The bankruptcy court also reached two of Trustee's counterclaims, awarding Trustee the 1998 Tax Refund and directing the IRS to accept PT-1's Stub Period tax return. *Id.* at 277. The bankruptcy court further ruled that the IRS was not entitled to setoff or recoup PT-1's tax refund against its tax debt because such setoff or recoupment rights were extinguished by the PT-1's confirmation plan. *Id.* at 271-73. The bankruptcy court denied Trustee's counterclaim for the 2001 Tax Refund based on the inadequacy of the evidence and set an evidentiary hearing for that claim. *Id.* at 275-77.

In the instant motion, the United States seeks to appeal the bankruptcy court's March 31, 2009 decision (*In re PT-1 III*). The evidentiary hearing on the 2001 Tax Refund has proceeded during the pendency of this motion for interlocutory appeal.

## DISCUSSION

## I.      Standard Applicable to 28 U.S.C. § 158(a)(3) Interlocutory Appeals

The United States moves this Court, pursuant to 28 U.S.C. § 158(a), to grant it leave to appeal the bankruptcy court's March 31, 2009, decision in favor of Trustee. It is undisputed that the March 31, 2009 decision does not constitute a "final judgment" of the bankruptcy court and, thus, this Court may only retain jurisdiction over an interlocutory appeal under 28 U.S.C. §

158(a)(3). Section 158(a)(3) provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from . . . interlocutory orders and decrees, . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3).

Because the text of § 158(a)(3) fails to instruct courts as to when leave to appeal an interlocutory decision should be granted, this Court must first determine the criteria which governs § 158(a)(3) appeals. To date, the Second Circuit has not directly decided this question, noting only that the decision is committed to the discretion of the district court. *See Kassover v. Kassover (In re Kassover),* 343 F.3d 91, 94 (2d Cir. 2003). Nevertheless, in exercising this discretion, "many district courts have found it useful to consider the standards specified in 28 U.S.C. § 1292(b)." *In re WorldCom, Inc.,* No. 08-CV-10354, 2009 WL 2215296, at *3 (S.D.N.Y. July 23,2009). *See* Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual* § 5.07[4] (3d ed. 2008) (collecting cases). Section § 1292(b)[1] governs interlocutory appeals from district courts to courts of appeals, an obvious analogue to § 158(a)(3) appeals. The district courts in this Circuit have readily adopted this approach. *See. e.g.. In re Parikh,* No. 09-MC-0227, 2009 WL

---

[1]  Section 1292(b) provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

28 U.S.C. § 1292(b).

2383032 (E.D.N.Y. July 30, 2009); *In re WorldCom, Inc.,* 2009 WL 2215296; *Yerushalmi v. Shiboleith,* 405 B.R. 44, 48 (E.D.N.Y. 2009) (applying § 1292 and collateral order doctrine to § 158(a)(3) appeal); *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.,* No. 08-CV-160, 2008 WL 2622931 (E.D.N.Y. July 1, 2008); *Bond I, supra; In re Cutter,* No. 05-CV-5527, 2006 WL 2482674 (E.D.N.Y. Aug. 29, 2006) (applying § 1292 and collateral order doctrine to § 158(a)(3) appeal); *In re Quigley,* 323 B.R. 70, 77 (S.D.N.Y. 2005) ("courts in this Circuit have invariably held [that] all appeals governed by Section 158(a)(3) . . . should refer to the standards articulated by Section 1292(b) to determine whether leave to appeal should be granted.") (citing *In re Kassover,* 343 F.3d 91 (2d Cir. 2003)); *In re Enron Corp.,* 316 B.R. 767, 771 (S.D.N.Y. 2004). Indeed, since the motion papers in this case have been filed, one court in this Circuit has called it "well-settled" that the § 1292(b) standard governs § 158(a)(3) appeals. *See In re Parikh,* 2009 WL 2383032, at *1.

The United States advises this Court to reject this line of precedents and to utilize a "broader grant of discretion" to review interlocutory orders of bankruptcy courts than articulated under § 1292(b). Appellant's Br. 20. The United States' position is premised on the lack of specific language in § 158(a)(3) to apply such rigorous standards and on the differing relationship between bankruptcy courts and district courts on one hand and district courts and courts of appeals on the other. The United States acknowledges that reading § 1292(b) standards into § 158(a)(3) has become the "majority" rule among the district courts of this Circuit; nevertheless, it steadfastly maintains that this Court should employ some other rule. Appellant's Reply Br. 7. If such a "minority" rule exists, it appears to be a minority rule of one. The United States cites only one district court opinion in this Circuit that fails to apply the § 1292 standards in reviewing a § 158(a)(3) appeal. In *Mishkin v. Ageloff,* 220 B.R. 784, 791 (S.D.N.Y. 1998), the court found that

"rigid adherence to the section 1292(b) standard is not appropriate." The *Mishkin* court adopted this approach based on the fact that "the concept of finality is viewed with greater flexibility in the bankruptcy context." *Id.*

Nevertheless, neither the *Mishkin* court nor the United States put forth any alternate criteria for courts to employ in evaluating § 158(a)(3) appeals. The United States only alludes to some amorphous "broad . . . discretion" standard, Appellant's Br. 20, while the *Mishkin* court only applied a "flexible" standard without further delineating the meaning of flexibility. *See Mishkin,* 220 B.R. at 791. Bankruptcy courts and parties, including the United States, are better served by an articulable standard in this regard rather than a "whatever-fits-the-judge's-fancy" test. Furthermore, the Court notes that the *Mishkin* court specifically limited its decision to the "the unique set of circumstances presented" in the case and such circumstances do not appear in this case. *See Mishkin,* 220 B.R. at 791 & 792 n.5.

Under the weight of these precedents, the Court does not find the United States' argument persuasive and applies § 1292(b)'s standards in reviewing the United States' request for an immediate appeal. Accordingly, under § 1292(b), leave to appeal the March 31, 2009, order can only be granted to the United States if it establishes that "the order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *McKenzie-Gilyard,* 2008 WL 2622931, at *2 (citing *In re Enron,* 316 B.R. at 771-72). The United States must also demonstrate that its appeal involves "exceptional circumstances." *Id.; see also In re Perry H. Koplik & Sons,* 377 B.R. at 73 ("The party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances' to 'overcome the general aversion to piecemeal litigation' and 'justify a departure from the basic policy of postponing appellate

review until after the entry of a final judgment.'") (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 24 (2d Cir. 1990)).

The interlocutory appeal is strongly disfavored in federal courts as it may "prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re World Trade Cent. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007). It "is a rare exception" where, in the discretion of the district judge, an immediate appeal "may avoid protracted litigation." *Id.* (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996)). Judges have "unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met." *Id.*, (citing *Gulino v. Bd. of Educ.*, 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002)).

## II.     Motion for Leave to File Interlocutory Appeal

The United States raises nine distinct issues for review on interlocutory appeal. The Court will recount each question in turn and then collectively analyze them under the rubric of § 1292(b).

### a.   Issues for Immediate Review

**(1)-(2)** The United States seeks to appeal the bankruptcy court's rulings that it had jurisdiction over the Trustee's counterclaims pursuant to 11 U.S.C. § 505 and that the United States waived its sovereign immunity pursuant to 11 U.S.C. § 106. Section 505(a) permits the bankruptcy court, with certain statutory exceptions, to "determine the amount or legality of any tax, any fine or penalty relating to a tax," including "any right of the estate to a tax refund," and § 106(a)(1) explicitly abrogates sovereign immunity for claims under § 505. 11 U.S.C. §§ 505(a); 106(a)(1). Under the terms of PT-1's confirmation plan, the Trustee was granted the right to

enforce certain claims belonging to PT-1's estate, including claims under § 505. The bankruptcy court then ruled that Trustee's counterclaims arose under § 505 and that § 106(a)(1) waived the United States' sovereign immunity with respect to the § 505 claims. *See PT-1 III*, 403 B.R. at 262, 264. The United States maintains that § 505(a)(2) only permits claims by a bankruptcy "trustee" and argues that Liquidating Trustee is not a "trustee" under the Bankruptcy Code, but a state-law trust established pursuant to PT-1's liquidation plan akin to a "receiver."

**(3)** The United States also challenges the bankruptcy court's holding that 11 U.S.C. § 106(b) provides an alternate basis for the abrogation of sovereign immunity. *Id.* Under § 106(b), "[a] governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim . . . that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C. § 106(b). The bankruptcy court ruled that the IRS filed a proof of claim for the Short Period which is also the basis of Trustee's counterclaim disputing the disallowance of the NOLs carryovers. *PT-1 III*, 403 B.R. at 262. The United States argues that it is incongruent for the bankruptcy court to hold that the IRS's administrative claim was null as time barred and yet hold it serves as a waiver of sovereign immunity for Trustee's counterclaims. The United States also contends that § 106(b) only applies to a statutory "trustee" of the estate, not a Liquidating Trustee under a confirmation plan and that the two claims do not arise from the same transaction.

**(4)** Next, the United States requests interlocutory appeal of the bankruptcy court's holding that the requirements of 11 U.S.C. § 505(a)(2)(B) do not apply to Trustee's counterclaims. Section 505(a)(2)(B) requires that a tax refund request be filed with the IRS as a prerequisite to the bankruptcy court's authority to determine the right to a tax. 11 U.S.C. § 505(a)(2)(B). The bankruptcy court held, based on several non-binding court decisions and the provision's legislative

10

history, that such a requirement is not applicable when the refund is sought as a counterclaim to a proof of claim. *PT-1 III*, 403 B.R. at 263. The United States seeks to appeal this decision since the Second Circuit has yet to decide this issue.

(5) The United States further requests an appeal of the bankruptcy court's ruling that § 702 of the Administrative Procedures Act ("APA") waives IRS's sovereign immunity as to PT-1's counterclaim for an injunction. *See* PT-1 III, 403 B.R. at 268. Section 702 of the APA entitles "judicial review" for an individual who is "adversely affected or aggrieved by agency action" or who "suffer[s] a legal wrong because of agency action." 5 U.S.C. § 702. The Section further provides that "[a]n action in court . . . seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States. . . ." *Id.* In this case, the IRS disallowed PT-1 to carry over NOLs involving the 2001 tax year because STAR, through which PT-1 was required to report its taxable income at the time, failed to file a tax return for the Stub Period, a prerequisite for permitting a NOL carry-over. On April 13, 2007, PT-1 sought to be designated as its own agent for tax purposes so that it could file a tax return for the Stub Period, which the IRS denied. *PT-1 III*, 403 B.R. at 258. The bankruptcy court then ordered the IRS to accept PT-1's stand-alone tax return for the Stub Period pursuant to the APA. The United States maintains that this decision enjoining the IRS to accept the stand-alone tax return is one of first impression and wrongly decided. Appellant's Br. 22. The United States also seeks immediate review of the bankruptcy court's determination that the IRS's refusal to designate PT-1 as an agent and to permit PT-1 to file a tax return for the Stub Period was arbitrary.

(6) The United States also argues that the bankruptcy court erred in ruling that its injunction did not violate the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."

11

26 U.S.C. § 7421. The bankruptcy found that the IRS withdrew its claim for taxes for the Stub Period and, therefore, filing the tax return for the Stub Period would not interfere with the IRS's ability to collect taxes since none were owed. *PT-1 III*, 403 B.R. at 266-67. The United States contends that the tax return could possibly affect the assessment of taxes against STAR, even though STAR is now defunct and the IRS has failed to explain why PT 1's filing would preclude it from obtaining a filing from STAR as a whole.

(7) The United States wishes this Court to review the bankruptcy court's determination that the IRS's claim for taxes and interest for the Short Period is time barred because it was filed after the bar date for administrative expenses. The United States asseverates that the claims bar date could not apply to a post-petition tax claim because § 505(b) is the exclusive means to truncate the IRS's time to assert an administrative tax. Alternatively, the United States argues that the bankruptcy court abused its discretion by refusing to pardon the lack of timeliness on the basis of excusable neglect.

(8) The United States also moves to appeal the bankruptcy court's denial of the IRS's right to setoff and to recoup PT-1's tax refunds with the claim for taxes for the 2002 tax year, notwithstanding the court's ruling that the 2002 tax year claim was time barred. The bankruptcy court ruled that PT-1's confirmation plan specifically extinguished the IRS's right of setoff and recoupment and the confirmation plan had to be given *res judicata* effect. *PT-1 III*, 403 B.R. at 272. The United States argues that Second Circuit has not ruled on whether a confirmation plan can bar setoff rights and the bankruptcy court's ruling in this case impermissibly negates the IRS's federal statutory right to setoff pursuant to I.R.C. § 6402(a). Furthermore, the United States contends that confirmation plans may only waive the IRS's sovereign immunity for pre-petition claims and not for the post-petition claims at issue here.

(9) Finally, the United States seeks to include in this interlocutory appeal the bankruptcy court's December 7, 2006 decision discharging Trustee's 2002 tax year liability under 11 U.S.C. § 505(b)(2). *See In re PT-1 I*, 357 B.R. 217. The United States' previous interlocutory appeal of this decision was rejected by Judge Cogan. *See Bond I, supra.*

### b. Application of § 1292(b)

None of these issues meets the exacting threshold for interlocutory appeals under § 1292(b). All nine issues share a common fatal flaw – namely, § 1292(b)'s third prong, the failure to demonstrate how their immediate appeal would materially advance the ultimate termination of this litigation. The courts in this Circuit have emphasized the importance of this prong in determining the propriety of an interlocutory appeal. *See Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998); *see also Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, 964 F.2d 85, 88 (2d Cir.1992) (expressing disapproval of § 1292(b) certification where it was "not clear" that disposition of certified issues would materially advance ultimate determination of the case); *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y.1998) ("requirement that an immediate appeal must materially advance the termination of the litigation is strictly construed").

This emphasis springs from the fact that the interlocutory appeal "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 866. Accordingly, an interlocutory appeal is "reserved for those cases where an intermediate appeal may avoid protracted litigation." *Id.* When weighing the propriety of an interlocutory appeal, the court's analysis may be guided by "the length of . . . court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling" and by the finding "that reversal would not substantially alter the course of district court

13

proceedings, or that the parties will not be relieved of any significant burden by reversal." 16

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE

§ 3930 (2d ed. West 2008). An immediate appeal is considered to advance the ultimate

termination of the litigation if that "appeal promises to advance the time for trial or to shorten the

time required for trial." *Transp. Workers Union of Am., Local 100, AFL CIO v. N.Y.C. Transit

Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (internal quotation marks omitted).

In this case, the March 3, 2009, decision was the third in a series of opinions by the

bankruptcy court. In the prior two opinions, the bankruptcy court dispensed with, discharged or

expunged all of the IRS's claims against Trustee, save one – the request for taxes and interest

arising out of the Short Period. In the March 3, 2009, decision, the bankruptcy court resolved the

IRS's outstanding claim, also ruling it time-barred. The March 3, 2009, decision also addressed

Trustee's counterclaims. First, the bankruptcy court approved Trustee's request to enjoin the IRS

into accepting PT-1's tax returns for the Stub Period. Second, it concluded that the evidence

demonstrated that Trustee was entitled to the 1998 Tax Refund. Finally, it held that the record

was inadequate to establish Trustee's request for the 2001 Tax Refund. *PT-1 III*, 403 B.R. at 277.

In concluding that the record did not support awarding the 2001 tax refund at the time, the

bankruptcy court first noted "relatively minor discrepancies" in PT-1's accounting. *Id.* at 276. It

then held that the record was incomplete because Trustee failed (1) to provide STAR's amended

tax return for the 2000 tax year (although the original 2000 tax return was in the record); (2) to

substantiate the amount paid in interest for taxes on the Short Period; and (3) to submit any

evidence to support the amount that PT-1 asserts it is entitled to carry back from the 2002 tax year.

*Id.* The bankruptcy court then ordered an evidentiary hearing to resolve Trustee's 2001 Tax

Refund counterclaim. The parties have indicated that the evidentiary hearing began in June of

14

2009 and is currently pending in the bankruptcy court. The issues to be resolved by this evidentiary hearing are the only outstanding matters to be decided by the bankruptcy court and, after the bankruptcy court rules on Trustee's final counterclaim, the entire case will be ripe for appeal to the district court. *See* 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees[.]").

Under these circumstances, the Court sees no exceptional circumstance sufficient to grant an interlocutory appeal. Simply, an immediate appeal of the March 31, 2009 decision would not relieve the United States from a significant burden. It is true that if the bankruptcy court's decisions on the numerous issues were immediately vacated, it would obviate the need to conclude this additional evidentiary hearing. Nevertheless, none of the issues involved at the hearing appear to be particularly complex, time-consuming, weighty, or burdensome. Indeed, district courts in this Circuit have not been reticent to deny an interlocutory appeal where the only issue left to be resolved by the parties involved simple or non-lengthy matters. *See, e.g., Laverne v. Corning*, 316 F.Supp. 629, 639 (S.D.N.Y. 1970) (interlocutory appeal denied where the only remaining issue of damages would not require "expensive and protracted litigation"); *Ratner v. Chemical Bank New York Trust Co.,* 309 F.Supp. 983, 989 (S.D.N.Y. 1969) (interlocutory appeal was not appropriate in case in which the facts were simple, and might even be susceptible of resolution on motion for summary judgment or like procedure for accelerated judgment); *Seidenberg v. McSorleys' Old Ale House, Inc.*, 308 F.Supp. 1253, 1261 (S.D.N.Y. 1969) (denial of a motion to dismiss would not be certified for appeal where case may be resolved by summary judgment, or, if necessary, the factual disputes will not require a long trial). If, on one hand, this Court denies interlocutory review and the bankruptcy court wrongly decided the issues within this appeal, then the United States will have suffered the minor indignity of defending against a

superfluous evidentiary hearing. If, on the other hand, this Court grants this appeal and the bankruptcy court's rulings were to be affirmed, the evidentiary hearing would continue after considerable delay in resolving each issue on appeal. The Court does not believe such a circumstance is enough justification to upset the strong presumption against piecemeal litigation.

Furthermore, the Court sees little reason to prematurely grant an appeal where the bankruptcy court is presumably on the eve of concluding its role in this litigation and the United States would be free to appeal all three bankruptcy court decisions in tandem. As the United States admits, the issues in the December 7, 2006 decision are "intertwined" with the rulings in the March 13, 2009 decision and it would "make more sense to brief [them] in conjunction." Appellant's Br. 34. A unitary appeal of all the issues before the bankruptcy court is, therefore, in the best interest of an efficient and timely resolution of this case.[2]

For these reasons, the Court denies the United States' motion for leave to file an interlocutory appeal.

## III.    Collateral Order Doctrine

The United States further contends that, should this Court deny a permissive appeal under § 158(a)(3), the March 13, 2009, decision is subject to an appeal as of right under the collateral appeal doctrine to the extent it overrules a claim of sovereign immunity.[3]    The collateral order

---

[2]    The United States further argues that granting leave to appeal here would support the termination of this litigation by making it more likely that the parties would settle the case. Appellant's Br. 38. Nevertheless, such a possibility exists in *any* civil case where one party is seeking to overturn an adverse ruling. The Court does not see how this speculative argument applies with any particular force in the instant case.
[3]    The United States has not cited any case holding that the collateral order doctrine is an avenue available for immediate review of an interlocutory bankruptcy court order where leave to appeal under § 158(a)(3) has been denied. A few courts in this Circuit have employed the collateral order doctrine factors as part of its § 158(a)(3) leave-to-appeal analysis. *See, e.g., Yerushalmi v. Shibolelth*, 405 B.R. at 48; *In re Cutter*, 2006 WL 2482674. Only one court

doctrine allows appeals from "a small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546 (1949). For courts to have jurisdiction under the collateral order doctrine, the order appealed must (1) "be effectively unreviewable on appeal from a final judgment"; (2) "conclusively determine the disputed question"; and (3) "resolve an important issue completely separate from the merits of the action." *In re World Trade Cent. Disaster Site Litig.*, 521 F.3d 169, 178 (2d Cir. 2008).

In the collateral order context, the Supreme Court has counseled courts to "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye," for "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Id.* (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994)). "[O]nly explicit statutory and constitutional immunities" from suit may be immediately appealed. *Id.* (citing *Digital Equip.*, 511 U.S. at 875). Courts have already approved the availability of interlocutory appeals for several categories of immunity. *See, e.g., P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) (denial of Eleventh Amendment

---

appears to have applied the collateral order doctrine to a bankruptcy court order independent of § 158(a)(3). *See In re Traversa*, 371 B.R. 1 (D.Conn. 2007) (denying a collateral order appeal for an interlocutory bankruptcy court discovery order).

The Supreme Court has stated that the values supported by the collateral order doctrine include "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Will v. Hallock*, 546 U.S. 345, 352 (2006). Because the concerns animating collateral order doctrine in appeals to courts of appeals from district courts would apply with equal force to appeals to district courts from bankruptcy courts, this Court sees no reason why collateral order doctrine is not applicable to interlocutory orders of a bankruptcy court. Whether the United States' assertion of sovereign immunity in this case is appealable *as of right* is a different matter and will be discussed in the body of this opinion.

sovereign immunity subject to interlocutory appeal by States); *Caribbean Trading & Fidelity Corp. v. Nigerian Nat. Petroleum Corp.*, 948 F.2d 111, 113-15 (2d Cir. 1991) (foreign sovereign's immunity under Section 1604 of the Foreign Sovereign Immunities Act); *Mitchell v. Forsyth*, 473 U.S. 511, 526-27 (1985) (government official's qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (the President's absolute immunity). *Abney v. United States*, 431 U.S. 651 (1977) (criminal defendant's double jeopardy claim).

In this case, the United States asserts federal sovereign immunity. Such immunity is well-established in the law. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Mitchell*, 463 U.S. at 212 ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). The United States asseverates that the bankruptcy court's denial of its assertion of sovereign immunity satisfies the collateral order doctrine elements because the decision effectively strips it of its immunity from the burdens of litigation – a decision unreviewable on appeal. The United States insists that the vindication of its sovereign immunity is appealable as of right similar to the right established for the other forms of immunity.

Nevertheless, not all immunities are created equally. Sometimes "immunity" connotes "a right not to be tried, which must be vindicated promptly" and sometimes it only means "a right to *prevail* at trial- a right to win, indistinguishable from all the other reasons why a party may not have to pay damages." *Pullman Constr. Indus. v. United States*, 23 F.3d 1166, 1169 (7th Cir. 1994) (emphasis original). Three Circuits have cast federal sovereign immunity in the latter category, while one Circuit indicates it belongs in the former category at least under certain circumstances. The Second Circuit has seemingly staked a middle ground on this question.

18

In *Pullman*, the Seventh Circuit confronted federal sovereign immunity in the bankruptcy context. In that case, the United States filed several claims for taxes against a debtor in a bankruptcy proceeding. *Id.* at 1167. In turn, the debtor counterclaimed seeking to recover approximately $500,000 in federal taxes paid to the United States, as a voidable preferential transfer. *Id.* The United States moved to dismiss the claim based on its federal sovereign immunity. *Id.* The bankruptcy court denied the motion based on the waiver of immunity under 11 U.S.C. § 106 and the district court affirmed the denial. The United States filed an immediate appeal to the Seventh Circuit.

Based on the myriad of congressional waivers of the immunity, the Seventh Circuit concluded that a defense from damages is all that remains of federal sovereign immunity.

> Indeed, the United States Code is riddled with statutes authorizing relief against the United States and its agencies--the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80; the Tucker Act, 28 U.S.C. §§ 1346(a), 1491(c); the whole jurisdiction of the Court of Federal Claims, 28 U.S.C. §§ 1491-1509; dozens if not hundreds of sue-and-be-sued clauses; the list can be extended without much effort. Now that 5 U.S.C. § 702 [the APA] exposes the United States to equitable relief, it is difficult to speak of federal sovereign immunity as a "right not to be sued." The only portion of the United States' original immunity from suit that Congress continues to assert is a right not to pay damages--a right circumscribed by statutes such as § 106.

*Id.* at 1168.

The Seventh Circuit concluded that federal sovereign immunity "today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it" and "does not imply that the United States retains a general 'right not to be sued' in its own courts for civil litigation in general or taxation in particular." *Id.* The court dismissed the interlocutory appeal for want of jurisdiction. *Id.* at 1170.

In *Alaska v. United States*, 64 F.3d 1352 (9th Cir.1995), the Ninth Circuit went further in

limiting the contours of federal sovereign immunity. In that case, the state of Alaska filed an action to quiet title to three river beds against the United States. *Id.* at 1354. The United States moved to dismiss the action based on its sovereign immunity. On appeal, the court noted that "[a]t first glance, federal sovereign immunity seems to fit comfortably among the types of immunities for which immediate appeal is appropriate." *Id.* at 1355. Nevertheless, after examination, the court found otherwise:

> We hold that, despite the label "immunity," federal sovereign immunity is not best characterized as a "right not to stand trial altogether." The only other case to consider the issue, *Pullman Construction*, concluded that federal sovereign immunity was more accurately considered a right to prevail at trial, i.e., a defense to payment of damages. Like immunity from service of process (leading to lack of personal jurisdiction), federal sovereign immunity is better viewed as a right not to be subject to a binding judgment. Such a right may be vindicated effectively after trial.

*Id.* The Ninth Circuit then dismissed the United States' appeal for want of jurisdiction.

Following suit, the Fifth Circuit recently held that the "sovereign immunity of the United States is not a 'right not to be sued.'" *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.,* 481 F.3d 265, 277 (5th Cir. 2007). In *Houston Community Hospital*, a hospital sued Blue Cross in state court for failure to pay portions of three federal employee hospital bills and Blue Cross removed to federal court. *Id.* at 266-67. Blue Cross, as a contract health insurer under the Federal Employees Health Benefits Act, moved to dismiss, in part, based on the sovereign immunity of the United States. *Id.* at 267-68. The district court denied the motion and, without leave from the lower court, Blue Cross filed an appeal with the Fifth Circuit. *Id.* at 268. Relying on *Pullman*, the circuit ruled that federal sovereign immunity did not encompass the right not to be sued. *Id.* at 277.

On the other hand, the Court of Appeals for the District of Columbia found that a claim for

federal sovereign immunity in the criminal contempt context sufficed to grant an interlocutory appeal. *In re Sealed Case No. 99-3091*, 192 F.3d 995, 997 (D.C. Cir. 1999). When a district court ordered the Department of Justice to prosecute the Office of Independent Counsel ("OIC") for criminal contempt in the Paula Jones case, the D.C. Circuit granted an interlocutory appeal to review an order denying the OIC's assertions of federal sovereign immunity. *Id.* In its ruling, the D.C. Circuit distinguished the Seventh and Ninth Circuit decisions, noting that *Pullman Construction* and *Alaska* were civil cases for which Congress has extensively waived federal sovereign immunity. The D.C. Circuit indicated that "it is far from clear that Congress has waived federal sovereign immunity in the context of criminal contempt." *Id.* at 999-1000. Furthermore, referring to the Fifth and Ninth Circuit's pronouncements that federal sovereign immunity is reduced to a defense against paying damages, the D.C. Circuit doubted "that federal sovereign immunity is so limited, especially in the unique circumstances presented here." *Id.* at 1000. In the end, the D.C. Circuit proceeded to the merits of the OIC's appeal before conclusively determining the jurisdictional question. *Id.* at 1000-01.

In light of these precedents, the Second Circuit recently took a more nuanced view of federal sovereign immunity in analyzing a request for interlocutory review of a claim based on the discretionary function immunity codified in Section 305 of the Stafford Act, 42 U.S.C. § 5148.[4] *In re World Trade Center,* 521 F.3d at 188-93. The Second Circuit warned that courts "should be

---

[4] Section 305 of the Stafford Act, entitled "Nonliability of Federal Government," provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.

careful in drawing too broad a conclusion from the *Pullman* court's analysis." *Id.* at 191. In the

Second Circuit's view,

> *Pullman* attempts to chart the general state of the law of sovereign immunity in an age of an omnipresent federal government. We read *Pullman* only to conclude that the traditional concept of sovereign immunity has been whittled away by Congress. It has been replaced by an elaborate system permitting some monetary claims and limiting or *forbidding* others. The court did not declare that a right not to be sued could not be extended to a category of claims; it simply said that the source of the right had to come from Congress (or the Constitution) and not from a claim of sovereign immunity.

*Id.* at 191 (internal quotations and citations omitted).

The Second Circuit concluded that neither *Pullman* nor its progeny counseled courts to

disregard the statements of the Supreme Court that sovereign immunity encompassed a right not to

be sued. *Id.* (citing *FDIC v. Meyer*, 510 U.S. at 475). Turning to the text of the Stafford Act, the

circuit found that the Act's discretionary function immunity was a "specific congressional

recognition" of a federal sovereign immunity and, thus, distinguishable from *Pullman*. *Id.* at 192.

The circuit ruled that the discretionary function immunity bestowed a right not to be sued on the

federal government and granted the interlocutory appeal. *Id.* at 192-93.

The lesson of *World Trade Center* is that whether federal sovereign immunity confers a

right not to be sued or solely a right to be free from liability is tethered to the specific statutory or

constitutional basis for the immunity. In this case, the bankruptcy court ruled that the United

States' sovereign immunity was pierced by two provisions of the Bankruptcy Code, 11 U.S.C. §

106(a)(1) and (b), and the APA, 5 U.S.C. § 702. *See* Section II(a)(1)-(3),(5) *supra*. Neither of

these provisions provides a "specific congressional recognition" of sovereign immunity. In fact,

the Second Circuit has already read these two provisions to serve as a broad waiver of sovereign

immunity. *See Presidential Gardens Assocs. v. United Sates ex rel. Sec'y of Hous. and Urban*

*Dev.*, 175 F.3d 132, 142-43 ("the APA creates a general waiver of sovereign immunity as to equitable claims") ("11 U.S.C. § 106 abrogates federal sovereign immunity with respect to most aspects of bankruptcy administration"). The Seventh Circuit confirms this view, ruling that 5 U.S.C. § 702 reflected Congress's "consent[] to litigation in federal courts seeking equitable relief from the United States" and that 11 U.S.C. § 106 "gives consent in limited circumstances seeking money." *Pullman*, 23 F.3d at 1168. Based on these statutes, the Seventh Circuit then held that the United States' claim of sovereign immunity in the bankruptcy context is not subject to interlocutory review. *Id.* at 1169.

Whatever reservations the Second Circuit had with *Pullman*, nothing in *World Trade Center* distracts from the Seventh Circuit's specific holding in the case. Indeed, the Court agrees with the Seventh Circuit's observations that "there is a venerable tradition of litigation between the United States and taxpayers to determine amounts due and recover overpayments" and that "[n]o one could argue with a straight face that the United States has, or ever had, a general 'right not to be sued' concerning taxes." *Id.* at 1168. Truly, interpreting whether the United States waived immunity under 11 U.S.C. § 106, or even 5 U.S.C. § 702, requires nothing more than "an ordinary task of statutory interpretation, for which interlocutory appeals are no more necessary (or appropriate) than they are in the bulk of federal litigation." *Id.* at 1169.

Accordingly, the Court dismisses this appeal for want of jurisdiction.

## CONCLUSION

For the foregoing reasons, the United States' motion for leave to appeal the bankruptcy court's orders, granting Trustee summary judgment in part, is denied. The Clerk of Court is directed to close this matter.

**SO ORDERED.**

Dated: Brooklyn, New York
October 7, 2009

_s/ SLT_
SANDRA L. TOWNES
United States District Judge